**Twyla THOMPSON,**

v.

**Donald KELCHNER, Superintendent, Sci Muncy; the District Attorney of the County of Philadelphia; the Attorney General of the State of Pennsylvania, Appellants.**

No. 01–3406.

United States Court of Appeals, Third Circuit.

Argued April 5, 2002.

Decided May 8, 2002.

Robert M. Falin, (Argued), Thomas W. Dolgenos, Office of District Attorney, Philadelphia, PA, for Appellants.

Norris E. Gelman, (Argued), Philadelphia, PA, for Appellee.

Before SLOVITER, BARRY, and ALARCON,* Circuit Judges.

## OPINION OF THE COURT

BARRY, Circuit Judge.

On April 5, 1986, in the Court of Common Pleas of Philadelphia County, a jury convicted Twyla Thompson of the first degree murder of her boyfriend and possession of an instrument of crime. She was sentenced to life in prison for the murder and given a concurrent sentence of one-and-a-half to three years for the possession of an instrument of crime. Thompson unsuccessfully challenged her convictions on direct appeal. She then sought collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 23 Pa. C.S.A. § 9541, alleging, as relevant here, that her counsel was ineffective because he failed to object to two sentences in the trial court's lengthy instructions to the jury on reasonable doubt. The PCRA court disagreed

and dismissed the petition. After reviewing the instructions as a whole and concluding that they fairly and completely advised the jury of the applicable law and, thus, that Thompson's attack on counsel's effectiveness lacked merit, the Superior Court affirmed. *Commonwealth v. Thompson*, No. 1295 Phila. 1998 (Pa.Super.Ct. July 8, 1999). The Pennsylvania Supreme Court subsequently denied Thompson's request for discretionary review. *Commonwealth v. Thompson*, 562 Pa. 669, 753 A.2d 818 (Pa.2000).

On July 10, 2000, Thompson filed a habeas corpus petition under 28 U.S.C. § 2254 in the United States District Court, once again alleging that counsel was ineffective for failing to object to, among other instructions, the aforementioned two sentences. On April 18, 2001, the Magistrate Judge issued a Report and Recommendation, finding that Thompson's various challenges to the instructions were without merit and, thus, that the ineffective assistance claim failed. The District Court disagreed, however, as to the one challenge it considered—the challenge to the reasonable doubt instructions—and granted Thompson habeas relief. The Court found that the two sentences pinpointed by Thompson violated the Due Process Clause of the Fourteenth Amendment and, thus, counsel's failure to object to them constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Based on this finding, the Court went on to conclude that the Pennsylvania courts that reviewed Thompson's PCRA petition had rendered decisions that were " 'contrary to' and an 'unreasonable application of' Supreme Court precedent regarding the right to the effective assis-

---

* The Honorable Arthur L. Alarcon, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

tance of counsel and the due process right to correct reasonable doubt instructions." *Thompson v. Kelcher*, No. 00–3466, at 12 (E.D. Pa. June 20, 2001) (citations omitted). Appellants argue that the District Court erred. We agree, and will reverse. We have jurisdiction to consider this appeal under 28 U.S.C. §§ 1291 and 2253(a). Our review is plenary. *Johnson v. Rosemeyer*, 117 F.3d 104 (3d Cir.1997).

Because Thompson filed her federal habeas petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, our scope of review is defined by the Act. The relevant section of the Act states that when reviewing state convictions, federal courts may grant habeas relief with respect to a claim adjudicated on the merits in state court proceedings only if the adjudication

> resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . .

28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of Supreme Court precedent occurs when the state court "correctly identifies the governing legal rule but applies it unrea-

sonably to the facts of a particular prisoner's case." *Id.* at 407–08, 120 S.Ct. 1495. The key inquiry here is "whether the state court's application . . . was objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. This inquiry is made in light of clearly established Supreme Court precedent at the time of the trial. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (noting that we must make "every effort . . . to eliminate the distorting effects of hindsight . . . [and] evaluate the [counsel's] conduct from counsel's perspective at the time" of the trial).\*

Long before Thompson's trial in 1986, the Supreme Court explicitly stated the constitutional requirement that the reasonable doubt standard of proof be strictly applied. In 1970, the Court held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [one] is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This was hardly a startling proposition, for sixteen years earlier the Court had held that "the prosecution must always prove the criminal charge beyond a reasonable doubt." *Holland v. United States*, 348 U.S. 121, 126, 138, 75 S.Ct. 127, 99 L.Ed. 150 (1954). It goes without saying, of course, that the constitutional rationale of *Winship* requires that the jury be instructed on the necessity of proof beyond a reasonable doubt. *Cool v. United States*, 409 U.S. 100, 104, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972); *Taylor v. Kentucky*, 436 U.S. 478, 485–86, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978); *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);

---

\* We note that the District Court and both parties improperly relied, at least in part, on post-trial Supreme Court precedent interpreting the Due Process Clause. *See, e.g., Penry v. Johnson*, 532 U.S. 782, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); *Victor v. Nebraska*, 511

U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

*Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

There is no contention here that the trial court failed to instruct the jury that it must find proof beyond a reasonable doubt before it could convict, nor could there be for the trial court told the jury dozens of times throughout its 109 page instructions that this was the standard of proof. A failure to have so instructed the jury would, of course, and without more, warrant relief. *Cool,* 409 U.S. at 104, 93 S.Ct. 354; *Jackson,* 443 U.S. at 318, 99 S.Ct. 2781. Rather, the argument is that the instructions were deficient because the jury was told in the two challenged sentences that reasonable doubt had to arise from or be based on the evidence (the "unconstitutional" instruction) and was also told that reasonable doubt could arise from or be based on the *lack* of evidence (the "constitutional" instruction). The "unconstitutional" instruction, the District Court found, reduced the government's burden of proof and because the "unconstitutional" and the "constitutional" instructions were contradictory, the argument goes, it is impossible to determine which the jury followed. Appellee's Br. at 31–32. Thus, Thompson concludes, counsel's failure to object violated her Sixth Amendment right to the effective assistance of counsel.

To successfully bring an ineffective assistance of counsel claim, a convicted defendant must show: (1) that counsel's performance was deficient; and (2) that such performance so prejudiced the defendant that he or she was deprived of a trial with a reliable result. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. Failure to object to jury instructions that would deprive a defendant of the protections of the reason-

able doubt standard would be objectively unreasonable.

The jury was instructed as follows as to reasonable doubt and the presumption of innocence, with the challenged language highlighted:

You have certainly heard many times heretofore during the course of this trial that the defendant comes before you presumed to be innocent of the crimes for which she has been charged. Presumption of innocence alone sufficient to acquit any defendant, unless the jury is satisfied that the prosecution has proved each and every element of the offense or offenses charged beyond a reasonable doubt.

Further, the presumption of innocence is not a mere formality. Each and every one of you as jurors is bound to entertain it conscientiously, sincerely, candidly and without any mental reservation or deviation whatsoever; and to give the defendant the full benefit of such a presumption of innocence. A65.

\* \* \* \* \* \*

[T]he law does not require the defendant to prove that he or she is innocent of the crime for which that information was returned. But, on the contrary, the law places upon the commonwealth the sole and only burden of proving the defendant's guilt beyond a reasonable doubt. A66–67.

\* \* \* \* \* \*

The burden of proving the defendant's guilt requires the Commonwealth to prove each and every element necessary to make out the crimes charged. And as I shall later explain to you with respect to the criminal information charged, murder generally, the burden of proof relates to including the degree and grade of crime, and this proof must be beyond a reasonable doubt. So, I

will tell you later, before you can find any accused in a criminal homicide proceeding guilty of any grade of criminal homicide, you must find that the Commonwealth's evidence proved beyond a reasonable doubt each and every element of the that specific grade or kind of criminal homicide.

[The] Commonwealth's burden of proving the defendant's guilt beyond a reasonable doubt never shifts, and remains upon the Commonwealth throughout the entire trial of the case until such time as the jury, after deliberations, and after consideration of all of the evidence, arguments of counsel, and the final charge or instructions from the court, conclude that the defendant is guilty of the crime or crimes charged beyond a reasonable doubt.

Further, there is a continuing presumption of innocence with the defendant, not only at the beginning of the trial, but throughout all of the stages, even while you as jurors are deliberating, and [the] Commonwealth has a never shifting burden of proving guilt beyond a reasonable doubt. This presumption of innocence is founded upon the first principle of justice and not a mere technicality, but a substantial and significant part of the law.

As stated, the law presumes a defendant to be innocent of a crime. Thus, a defendant, although accused, begins a trial with no evidence against him[.] The law permits nothing but legal and competent evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence by itself is sufficient to acquit a defendant unless you, as jurors, are satisfied beyond a reasonable doubt of the defendant's guilt.

What is reasonable doubt? Note initially, that although the Commonwealth has the burden of proving the defendant is guilty, this does not mean the Commonwealth must prove its case beyond all doubt or to a mathematical certainty, or must it demonstrate the complete impossibility of innocence. A reasonable doubt is such a doubt as would cause a reasonably [prudent], careful and sensible person to pause, hesitate and restrain himself or herself before acting upon a matter of highest importance in his or her own affairs. Reasonable doubt is such a doubt as would cause a person to hesitate in arriving at a conclusion of a matter of importance to that person. Therefore, should you, after you consider all of the evidence, have in your mind such a doubt as would cause you to hesitate in arriving at a conclusion of matters of importance to yourself, then it is your duty to give the defendant the benefit of that reasonable doubt and find the defendant not guilty.

The doubt, to be reasonable, must be one which fairly strikes the mind, a conscientious mind, and cloud[s] the judgment, not such a doubt as one may dig up, conjure up, or summon up out of nowhere for the purpose of escaping the consequences of an unpleasant verdict, but a doubt which is reasonable and honest, a real doubt fairly arising out of the evidence that was presented or out of the void, absence, or lack of evidence presented with respect to some element of the crime.

*Reasonable doubt is not merely any imagined or passing fancy that may come into the mind of the juror, it must be doubt rising arising from the evidence that is substantial and well founded on reason and common sense; a reasonable doubt such as would be taken notice of by a juror in deciding a case or a question or issue in a case is of*

the same nature as doubt that would cause a reasonable man or reasonable woman, in the conduct of his or her own affairs or matters of importance to herself or himself, to stop, hesitate and seriously consider as to whether he should or she should do a certain thing before finally acting. Further, a reasonable doubt is something different and much more serious than a possible doubt. During the course of our living day to day, and during the course of our acquisition of worldly knowledge about people, persons, things, matters of life, we have all learned of a possible doubt exist [sic] in all things, and it's impossible to–almost impossible to possess any human knowledge and come to any conclusion to a certainty beyond a reasonable doubt.

The Commonwealth is not required to prove its case beyond all doubt. *If you as jurors cannot find evidence on which to base doubt, then it is not a doubt arising from the evidence and not a reasonable doubt; simply a possible doubt.* And being so, therefore, it's not such a doubt as would justify a conscientious juror from hesitating or rendering a verdict where the mind is fairly satisfied [except] for the existence of such a doubt.

So, to summarize, you may not find a defendant guilty based on mere guess, suspicion or conjecture of guilt. As stated, a conviction may not be based upon suspicion or conjecture. The evidence must be such as reasonably justifies an inference of guilt of the accused; must be of such volume and quality as to overcome the presumption of innocence.

The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If it meets that burden, the defendant is no longer presumed innocent and you must find her guilty. On the other hand, if the Commonwealth does not meet its burden, then you must find the defendant not guilty, unless and until outweighed by evidence to the contrary. The law presumes a person is innocent of a crime or criminal wrong and that the law has been obeyed.

Therefore, if, after a consideration of all of the evidence, arguments of counsel and charge of this court, the jury has reasonable doubt of the defendant's guilt, you must find the defendant not guilty. But if the jury, after such same consideration, has no reasonable doubt of defendant's guilt, you must in turn find the defendant guilty. A69–74

\* \* \* \* \* \*

It's your duty to determine from the evidence what facts have been proved, what facts have not been proved. That means you are going to have to scrutinize the evidence, examine the evidence, sift out the evidence, weigh the evidence; and you have to determine how much of it is true or whether any of it is false . . . It's for you and you alone to decide this case based on the evidence as it was presented from the witness stand and in accordance with the instructions which I'm now giving you. A76–77.

We repeat the snippets of these lengthy instructions isolated for challenge: "Reasonable doubt is not merely any imagined or passing fancy that may come into the mind of a juror, it must be doubt arising from the evidence that is substantial and well founded on reason and common sense," and "If you as jurors cannot find evidence on which to base doubt, then it is not doubt arising from the evidence and not reasonable doubt; simply a possible doubt." The District Court concluded that it is reasonably likely that this language led the jury to conclude that reasonable doubt could not arise from an *absence* of

evidence, thereby depriving her of the protections of the reasonable doubt standard. We could not more strongly disagree.

It has long been established that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973) (citing *Boyd v. United States*, 271 U.S. 104, 107, 46 S.Ct. 442, 70 L.Ed. 857 (1926)); *see also Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). The Court stressed that each instruction forms "but one of many such instructions" and, therefore, the disputed instructions must be viewed in the context of the instructions as a whole. *Cupp*, 414 U.S. at 147, 94 S.Ct. 396.

While the District Court paid lip service to this principle, it did not apply it. When applied, we find that the jury instructions in this case—instructions as comprehensive as we have seen—did not deprive Thompson of the protections of the reasonable doubt standard of proof. Over and over again, the instructions made clear that the burden of proving Thompson's guilt beyond a reasonable doubt was on the Commonwealth. The instructions stressed that Thompson was presumed innocent and that this "presumption of innocence by itself is sufficient to acquit a defendant." The instructions went on to define reasonable doubt, explicitly stating that reasonable doubt could arise "out of the void, absence, or lack of evidence presented with respect to some element of the crime ." When the instructions subsequently stated that reasonable doubt "must be doubt arising from the evidence," it was merely to distinguish reasonable doubt from "an imagined or passing fancy that may come into the mind of a juror." Similarly, when the instructions stated that if "jurors cannot find evidence on which to base doubt, then it is not doubt

arising from the evidence and not reasonable doubt; simply a possible doubt," it was to distinguish reasonable doubt from speculation or "possible doubt," as the preceding and succeeding sentences made clear. When read in context, those sentences challenged simply because they did not repeat the "void, absence, or lack of evidence" language cannot be fairly read to eviscerate or contradict the extensive and correct instructions given by the trial court. As the *Holland* Court put it, "[w]e believe the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some." *Holland*, 348 U.S. at 140, 75 S.Ct. 127. Indeed, we believe that the argument Thompson makes here is a paradigm example of the "technical hairsplitting" condemned in *Boyd v. California*, 494 U.S. 370, 380–81, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), and that there is no reasonable likelihood that the jury understood the instructions to permit conviction on anything other than proof beyond a reasonable doubt. *Victor v. Nebraska*, 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).

We note, albeit in passing, that the trial court, while obliged to tell the jury that it could convict only on proof beyond a reasonable doubt, was not obliged to define that term. *United States v. Hernandez*, 176 F.3d 719, 728 (3d Cir.1999). As long ago as *Miles v. United States*, 103 U.S. 304, 26 L.Ed. 481 (1880), the Supreme Court recognized that "attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *Miles*, 103 U.S. at 312. Indeed, district courts in certain circuits have been admonished *not* to give an explanation of reasonable doubt to avoid creating confusion. The Seventh Circuit perhaps said it best: "[T]he phrase is self-defining, ... every attempt to explain renders an explanation of the explanation necessary ... the better practice is not to

82

attempt the definition ... any effort at further elucidation tends to misleading refinements." *United States v. Lawson,* 507 F.2d 433, 443 (7th Cir.1974). *See also United States v. Headspeth,* 852 F.2d 753, 755 (4th Cir.1988).

We note, as well, that when definition of reasonable doubt is attempted, that definition must, of course, be correct, but there is no requirement, at least as a matter of federal law, that the jury be instructed that reasonable doubt can be based on a lack of evidence. Indeed, of those circuits that have adopted pattern jury instructions, only one circuit—the Ninth—refers to the absence of evidence in the course of its instructions on reasonable doubt. Moreover, Devitt & Blackmar, the "bible" on which it is fair to say most federal judges most heavily rely, does not even allude to an absence of evidence in its model instructions on reasonable doubt, to wit:

> The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. The defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government.
>
> It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon

reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

> Unless the government proves, beyond a reasonable doubt, that the defendant has committed each and every element of the offense charged in the indictment, you must find the defendant not guilty of the offense. If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury must, of course, adopt the conclusion of innocence.

1 Devitt & Blackmar, Federal Jury Practice and Instructions, § 12.10 (4th Ed.1992). As the Second Circuit observed, "Trial judges would be exceedingly well advised to use the [Devitt & Blackmar] model instructions." *United States v. Gatzonis,* 805 F.2d 72, 74 (2d Cir.1986).

The jury was instructed innumerable times within the lengthy reasonable doubt instructions and throughout the course of the entire 109 page jury charge on the government's burden proof and the meaning of reasonable doubt was thoroughly and accurately explained.** Given that the two sentences challenged here, whether viewed in isolation or viewed in the context of the reasonable doubt instructions and the instructions as a whole, were

** The trial court also repeatedly instructed the jury on how it should consider the evidence. A few examples. "You should find the facts, based solely and exclusively on the evidence...." (A56); "in short, if from all the evidence you're satisfied beyond a reasonable doubt the defendant is not guilty...." (A100); "you should weigh and consider the evidence tending to show motive or absence of motive along with all other evidence...." (A106); "in order to find the defendant guilty

of this crime, you must find that the Commonwealth's evidence ... proves the following elements of the offense beyond a reasonable doubt...." (A113); "if you find that the Commonwealth's evidence was sufficient to establish beyond a reasonable doubt...." (A115–16); "the Commonwealth's evidence when analyzed...." (A123); "established beyond a reasonable doubt by the evidence presented in this courtroom...." (A125). Thompson has at no time contended, and

not deficient, the fact that counsel did not object cannot be considered "deficient performance" under *Strickland*.*** The state courts so found in the PCRA proceedings, concluding that the instructions, viewed in their entirety, fairly and completely advised the jury of the law regarding reasonable doubt. That conclusion was neither "contrary to" nor an "unreasonable application of" clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

We will reverse the order of the District Court granting habeas corpus relief to Thompson, and will remand for the Court to address the remaining claims raised in the petition.

does not now contend, that these instructions were infirm because of the absence of evidence language.

*** Because counsel's performance was not deficient, we need not reach the second prong of *Strickland* to assess whether Thompson was prejudiced nor decide whether, had there

been constitutional error in the instructions, it was "structural" such that prejudice need not be shown. Neither need we discuss appellants' argument that at the time of trial an allegedly defective reasonable doubt instruction was not a federal constitutional issue.